UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


GLOBAL TOUCH SOLUTIONS, LLC,

        Plaintiff,

v.                                      Civil No. 2:14cv346

TOSHIBA CORPORATION and
TOSHIBA AMERICA INFORMATION
SYSTEMS, INC.,

        Defendants.
-----------------------------------------------------------------

GLOBAL TOUCH SOLUTIONS, LLC,

        Plaintiff,

v.                                      Civil No. 2:14cv347

VIZIO, INC.,

        Defendant.
-----------------------------------------------------------------

GLOBAL TOUCH SOLUTIONS, LLC,

        Plaintiff,

v.                                      Civil No. 2:14cv390

APPLE, INC.,

        Defendant.
-----------------------------------------------------------------

GLOBAL TOUCH SOLUTIONS, LLC,

        Plaintiff,

v.                                      Civil No. 2:14cv391

MOTOROLA MOBILITY LCC,

        Defendant.
-----------------------------------------------------------------

GLOBAL TOUCH SOLUTIONS, LLC,

               Plaintiff,

v.                                     Civil No. 2:15cv17
                                     (formerly 3:14cv548)

MICROSOFT CORPORATION and
NOKIA INC.,

               Defendants.
-----------------------------------------------------------------

## OPINION AND ORDER

### I. Introductory Statement

    The joinder provision of the America Invents Act ("AIA") has had an evident impact on the procedural handling of patent infringement actions in scenarios where a plaintiff seeks to hold multiple defendants liable based on similarly designed consumer products. 35 U.S.C. § 299. To the extent joinder of alleged infringers was previously permitted in a patent case under Rule 20 of the Federal Rules of Civil Procedure, the AIA eliminated a patent holder's ability to file a single civil action against multiple industry competitors allegedly responsible for violating the same patent or family of patents. Moreover, once cases involving various companies' similar accused products are separately filed, the AIA expressly precludes consolidation "for trial." Id.; see In re: Maxim Integrated Products, Inc., Patent Litigation, 867 F. Supp. 2d

1333, 1335 (J.P.M.L. 2012) ("[T]he AIA changed the landscape of patent litigation—particularly the filing of actions against multiple unrelated defendants and the right to a separate trial when defendants are only accused of violating the same patent."); see also H.R. REP. 112-98, at 54, reprinted in 2011 U.S.C.C.A.N. 67, 85 ("The [AIA] also addresses problems occasioned by the joinder of defendants (sometimes numbering in the dozens) who have tenuous connections to the underlying disputes in patent infringement suits.").

While the practical effects of the AIA may still be unsettled in light of its relative infancy, it appears that the serial filing of separate patent infringement actions in the same court, on or about the same date, against different corporate defendants, has become the new normal in patent infringement litigation. See Norman IP Holdings, LLC v. Lexmark Int'l, Inc., No. 6:12cv508, 2012 WL 3307942, at *4 (E.D. Tex. Aug. 10, 2012) ("In response to the AIA's joinder provision, plaintiffs now serially file multiple single-defendant (or defendant group) cases involving the same underlying patents."). Such serial filing "presents administrative challenges for the Court and, left unchecked, wastes judicial resources by requiring common issues to be addressed individually for each case." Id. One of the ways in which district courts have sought to temper the waste of judicial resources is by consolidating associated patent actions for pretrial matters, either invoking Federal Rule of Civil Procedure 42 for cases pending within a single district, or MDL cross-district

consolidation procedures in cases pending in multiple districts. See DietGoal Innovations LLC v. Wegmans Food Markets, Inc., No. 2:13cv154, 2014 WL 2561222, at *2 (E.D. Va. June 6, 2014) (denying a motion to sever one patent case from several others after the district court had entered a sua sponte order consolidating the cases under Rule 42 for all pretrial matters); Cellport Systems, Inc. v. BMW of North America, L.L.C., No. 14-cv-1631, 2014 WL 6910293, at *1-2 (D. Colo. Dec. 9, 2014) ("Courts have held that [the AIA joinder provision] does not prevent the consolidation of cases against accused infringers for pretrial matters." (emphasis added)); In re: Bear Creek Techs, Inc., ('722) Patent Litig., 858 F. Supp. 2d 1375, 1378 (J.P.M.L. 2012) ("We find that the America Invents Act does not alter our authority to order pretrial centralization of this litigation."); In re: Maxim Integrated Products, 867 F. Supp. 2d at 1335 (reiterating that while MDL consolidation remains permissible post-AIA, "the AIA's right to separate trials should be taken into account when making the decision to centralize a given litigation, inasmuch as the AIA is the new reality in patent litigation and its right to separate trials could impact the Panel's calculus regarding whether centralization benefits 'the convenience of parties and witnesses' and 'will promote the just and efficient conduct' of the litigation." (quoting 28 U.S.C. § 1407(a)).

The filing of one or more motions seeking a discretionary transfer of venue in associated patent actions raises additional

4

concerns, as the various defendants, witnesses, and sources of proof relevant to separately filed patent infringement actions will invariably be found in different districts. Balancing the complex and competing factors raised in such motions presents difficult questions, which in the pending cases include: (1) Does it serve justice and economy to split up five cases with similar allegations of infringement when at least three, and as many as eight, of the same patents are asserted against the same types of consumer products (laptops, tablets, etc.) sold by industry competitors? (2) Does refusal to transfer such cases in an effort to keep them together create an incentive for plaintiffs to "manufacture venue" by filing numerous similar actions in the same court, around the same time, in order to increase the pressure on the Court to reject any of the defendants' attempts to transfer an individual case? (3) Does transferring all of the similar cases to a far "better" forum, which necessarily cannot be the "best" forum as to each individual case, best satisfy the convenience and justice factors, or does it allow defendants to forum shop? (4) Does it comport with justice to require a plaintiff who filed multiple separate actions, as required by the AIA, to not only leave its chosen forum as to those cases with the strongest transfer arguments, but to have to simultaneously litigate multiple (similar) patent cases on opposite coasts of the United States?

Grappling with these competing considerations in light of the circumstances presented in each of the five cases pending before this Court, some of which present stronger arguments for transfer than others, necessarily requires the Court to reach an imperfect resolution. However, although less than perfect, this Court's resolution of the motions before it best comports with the § 1404(a) convenience and justice factors.

## II. Factual and Procedural Background

Against such backdrop, currently before the Court are five separate patent infringement actions filed by plaintiff Global Touch Solutions, LLC, ("Plaintiff" or "GTS"). The defendant(s) in each case are: (1) Toshiba Corporation ("Toshiba") and its American subsidiary Toshiba American Information Systems, Inc. ("TAIS"); (2) Vizio, Inc. ("Vizio"); (3) Apple, Inc. ("Apple"); (4) Motorola Mobility LLC ("Motorola"); and (5) Microsoft Corporation ("Microsoft") and its subsidiary Nokia Inc. ("Nokia").[1] These five separate civil cases were initially randomly assigned to four different district judges within this district. However, because all five cases involve similar allegations, and share common patents and common asserted claims, the four cases assigned to other judges of this Court were reassigned to the undersigned judge (to whom the

---

[1] The Court will refer herein to the individual cases by the name of the defendant(s), for example, the case involving Toshiba and TAIS will be referred to as the "Toshiba/TAIS Action." Additionally, the Court will collectively refer to the seven named defendants as "Defendants."

first case was assigned) for the purposes of economy, consistency, and fairness.

Although the number and identity of the patents asserted in the different actions varies somewhat, four of the five cases have at least five patents in common.[2]  The defendant(s) in each of the five cases filed a motion seeking transfer to the Northern District of California, with one defendant alternatively seeking transfer to the Central District of California.  Plaintiff GTS opposes transfer in each of the five cases, arguing in the Toshiba/TAIS Action that such case could not have originally been filed in the Northern District of California, and arguing in all cases that the named defendant(s) fails to demonstrate that the relevant convenience and justice factors justify a transfer of venue.

Each motion to transfer in each of the five separately filed cases must be analyzed on its own merits in order to determine: (1) whether such action could have been filed in the putative transferee forum; and (2) whether transfer to such permissible transferee forum would substantially advance interests of convenience and justice. Although it is evident that each motion to transfer must stand on its own, Plaintiff has commendably acknowledged that if the first test, the threshold test, is met in each of the five cases pending before this Court, the Court must necessarily consider keeping the

---

[2] Only three patents are asserted in the Toshiba/TAIS Action, but two of these three patents are also asserted in the Apple Action, and all three of them are asserted in the other pending actions.

7

cases together to promote judicial economy, convenience of the witnesses and parties (to include Plaintiff), and to lessen the risk of inconsistent results.  2:14cv346, Hearing Tr. 38-40, ECF No. 57. Defendants likewise contend in their Court filings that keeping the cases together is preferable.  The motivation to keep the cases together appears particularly acute when, as here, the cases involve the same patents, the same patent claims, the same types of allegedly infringing consumer products, and the identified potential forums, the Northern/Central District of California and the Eastern District of Virginia, are on opposite coasts of the United States, approximately 3,000 miles apart.  Although the parties are in apparent agreement that strong consideration should be given to keeping the cases together, they disagree as to whether the cases belong together in Virginia, or together in California.

### III. Standard for Transfer of Venue

Title 28 of the United States Code, Section 1404, establishes that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).[3]

---

[3] If a case is filed in an improper venue, then 28 U.S.C. § 1406 governs a motion seeking a transfer of venue.  However, here, none of the Defendants assert that the instant venue is improper; rather, they argue that the instant forum is inconvenient for the trial of these individual cases.  As clarified in one of Microsoft's briefs, 2:15cv17, ECF No. 32, whether

Although listed as the second clause in § 1404(a), the threshold question when addressing a motion to transfer venue is "whether the proposed transferee court is one in which the action originally may have been brought." BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F. Supp. 2d 493, 498 (E.D. Va. 2000). "In order to demonstrate that an action might have been brought in a proposed transferee district, a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003) (emphasis added) (citing LG Electronics Inc. v. Advance Creative Computer Corp., 131 F. Supp. 2d 804, 812 (E.D. Va. 2001)). If the claims could have been brought in the transferee court at the time the action was filed, the subsequent decision to transfer venue is within the discretion of the court. One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F. Supp. 2d 824, 828 (E.D. Va. 2004) (citing Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 591 (E.D. Va. 1992)).

If a party seeking transfer makes the threshold showing that the action could have been filed in the proposed transferee forum, the Court then considers "whether the interest of justice and convenience of the parties and witnesses justify transfer to that

---

Defendants' product sales and marketing efforts in this District constitute sufficient contacts with this forum to confer jurisdiction on this Court is a separate issue from determining whether this District is an inconvenient forum for resolving the issues raised in Plaintiff's complaints.

forum." Koh, 250 F. Supp. 2d at 630; see 28 U.S.C. § 1404(a);
TechnoSteel, LLC v. Beers Const. Co., 271 F.3d 151, 160 (4th Cir.
2001) (indicating that § 1404(a) contemplates "transfer of a case
from one district court to another district court for the
conveniences of the parties and witnesses—the only difference being
locale—without substantially affecting the rights of the parties").
In conducting the convenience and justice inquiry, the Court
considers several factors to determine whether to transfer venue,
including: "'(1) ease of access to sources of proof; (2) the
convenience of the parties and witnesses; (3) the cost of obtaining
the attendance of witnesses; (4) the availability of compulsory
process; (5) the interest in having local controversies decided at
home; (6) in diversity cases, the court's familiarity with the
applicable law; and (7) the interest of justice.'" One Beacon Ins.
Co., 312 F. Supp. 2d at 828 (quoting BHP Int'l Inv., 105 F. Supp.
at 498). As prior decisions from this District have recognized, the
"principal factors" to consider are: (1) the plaintiff's choice of
forum; (2) witness convenience and access to sources of proof; (3)
party convenience; and (4) the interest of justice. Koh, 250 F.
Supp. 2d at 633. In weighing these factors, the Court is mindful
that "[t]he party seeking transfer bears the burden of proving that
the circumstances of the case are strongly in favor of transfer" and
that "transfer is not appropriate where it will only serve to shift
the balance of inconvenience from one party to the other." Heinz

Kettler GMBH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 667-68 (E.D. Va. 2010) (internal quotation marks and citations omitted).

## IV. Discussion - Jurisdiction and Venue Standards

### A. Jurisdiction of Transferee Forum

"As an initial matter, the court must determine whether the proposed transferee court is one in which the action originally may have been brought." BHP Int'l Inv., 105 F. Supp. 2d at 498. Although application of the § 1404(a) convenience and justice factors is governed by the law of the regional circuits, Federal Circuit law applies to the determination of whether a district court has personal jurisdiction over a defendant in a patent case. Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed. Cir. 2008). "In order to establish personal jurisdiction in a patent infringement case over a non-resident defendant whose products are sold in the forum state, a plaintiff must show both that the state long arm statute applies and that the requirements of due process are satisfied." Commissariat á l'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir. 2005) (citations omitted).

Here, all Defendants in the five related patent cases seek transfer to California, and "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." Harris Rutsky & Co. Ins. Services, Inc. v. Bell &

11

Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Code

Civ. Pro. § 410.10). As explained by the Federal Circuit:

> Because California's long-arm statute is co-extensive
> with federal due process requirements, the jurisdictional
> analyses under California law and federal law are the same.
> Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801
> (9th Cir. 2004). The constitutional touchstone for
> determining whether an exercise of personal jurisdiction
> comports with due process "remains whether the defendant
> purposefully established 'minimum contacts' in the forum
> State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474
> (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310,
> 316 (1945)). . . . The Federal Circuit applies a three
> prong test to determine if specific jurisdiction exists:
> (1) whether the defendant purposefully directed
> activities at residents of the forum; (2) whether the claim
> arises out of or relates to those activities; and (3)
> whether assertion of personal jurisdiction is reasonable
> and fair. Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed.
> Cir. 1995); see also Schwarzenegger, 374 F.3d at 802.

Nuance Communications, Inc. v. Abbyy Software House, 626 F.3d 1222,

1230-31 (Fed. Cir. 2010).

### B. Propriety of Venue in Transferee Forum

To determine whether venue lies in a patent case in a proposed

transferee forum, the Court must begin with the venue statute that

is specifically tailored to patent cases. See 28 U.S.C. § 1400(b).

Such statute provides that venue in a patent infringement lawsuit

is proper in "the judicial district where the defendant resides, or

where the defendant has committed acts of infringement and has a

regular and established place of business." Id. (emphasis added).

While § 1400(b) does not define the term "resides," such term is

defined in § 1391. Because the instant cases all involve defendants

that are corporations, and because the venue determination must be made as to a state (California) with multiple federal judicial districts, each defendant's residence is defined by § 1391(d), which states as follows:

> (d) **Residency of corporations in States with multiple districts.**--For purposes of venue under this chapter [chapter 87 of Title 28], in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(d) (emphasis added); see LG Electronics, 131 F. Supp. 2d at 810 (highlighting, while interpreting an earlier version of § 1391, that "[b]ecause Chapter 87 of the Code includes § 1400(b), the residence definition found in § 1391[d] applies to § 1400(b)"); see also VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1578 (Fed. Cir. 1990).

### C. State-wide vs. District-wide Contacts

In conducting the jurisdictional and venue inquiries based on the standards set forth above, in certain circumstances, it is important to distinguish between the contacts considered for the jurisdictional analysis, which look to a party's contacts with the entire state, and the contacts considered for the venue analysis, which as stated in § 1391(d), are limited to those contacts with the

particular federal district within such state. Accordingly, in conducting this two-pronged inquiry in the instant case:

> First, it must be shown, . . . that [the defendant] has . . . "minimum contacts" with the entire state of [California] so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. 310, 316 (1945). Second, personal jurisdiction having been established, venue is proper in any district in which there are also sufficient contacts to fulfill the International Shoe standard. Finally, if a defendant's contacts are spread throughout the state in such a manner that there is no single district in which the requirements of personal jurisdiction are satisfied, venue is proper in the district with the "most significant contacts." 28 U.S.C. Section 1391[d].

Hester Industries Inc. v. Stein Inc., No. 96-719-A, 1996 WL 710835, at *3 (E.D. Va. Oct. 3, 1996); see SKF Condition Monitoring, Inc. v. SAT Corp., No. 07cv1116, 2008 WL 706851, at *1 n.1 (S.D. Cal. Feb. 27, 2008) (explaining that "[i]n states with more than one federal district, personal jurisdiction and venue for corporate defendants are similar but not identical questions," with the jurisdictional inquiry focusing on contacts "with the forum state," and the venue inquiry focusing on contacts "with the forum district"); Avery Dennison Corp. v. Alien Technology Corp., 632 F. Supp. 2d 700, 712 (N.D. Ohio 2008) ("The venue analysis is similar to the personal jurisdiction analysis, but, despite [the plaintiff's] contention otherwise, the relevant contacts [for the purposes of analyzing venue] are limited to those in the Northern District of Ohio, as opposed to the entire state."); Bilek v. Burris, No. 3:10-13-DCR,

2010 WL 4629616, at *8 (E.D. Ky. Nov. 8, 2010) (explaining that, even though the district court for the Eastern District of Kentucky "may have personal jurisdiction over [the plaintiff's] unjust enrichment claim" based on events occurring in the Western District of Kentucky, venue is improper in the Eastern District because unlike jurisdiction, venue requires a district by district analysis); see also Autobytel, Inc. v. Insweb Corp., No. 2:07cv524, 2009 WL 901482, at *2 n.2 (E.D. Tex. Mar. 31, 2009) ("[P]ersonal jurisdiction only requires that the necessary contacts are found within the forum state, here the entire State of Texas." (citing International Shoe, 326 U.S. at 317)).

### D. Analysis of Jurisdiction and Venue in the Five Cases Pending before this Court

#### 1. Apple Action, Microsoft Action, & Motorola/Nokia Action

As stated in this Court's prior Order, ECF No. 31, the parties' briefing demonstrates that there is no dispute that the Apple, Microsoft, and Motorola/Nokia Actions could have been filed in the Northern District of California. As the basis for jurisdiction and venue in the Northern District of California appears to be supported by the respective Defendants' filings and is unchallenged by Plaintiff in these three actions, no further analysis on this issue is necessary. Cf. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (indicating that "where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes

of determining jurisdiction") (internal quotation marks and citations omitted).

## 2. Vizio Action

Due to the lack of clarity in the initial record, the Court permitted additional briefing as to whether Vizio was in fact seeking transfer to the Northern District of California and whether Vizio was subject to suit in that district.[4]  This Court subsequently received a supplemental brief, and supporting exhibits, demonstrating that Vizio does in fact expressly request transfer to the Northern District of California, and that venue is proper in that district on the basis of Vizio's contacts with the district. Specifically, Vizio presented evidence that it sells its products, including the allegedly infringing products, both directly to consumers in the Northern District of California through the Vizio website and to large nationwide retailers, including Walmart, Best Buy, and Target.  Vizio's evidence demonstrates that it is well-aware that such retailers have physical locations in the Northern District of California and that they sell Vizio products to end consumers from such stores.  ECF No. 32, at 4; ECF Nos. 32-4, 32-5, 32-6, and 32-12.

---

[4] Vizio, in the first instance, requests the transfer of its case to the Northern District of California as one of the five cases for which Defendants collectively seek transfer.  In the event that this Court denies the motions seeking to transfer all five cases to the Northern District of California, Vizio alternatively requests transfer of the Vizio Action to the Central District of California, Vizio's home forum.  2:14cv347, ECF Nos. 25, 32.

Plaintiff's response to Vizio's supplemental filing acknowledges that "Vizio's evidence goes toward particularized targeting of the Northern District of California" and notes that "GTS does not dispute those facts." ECF No. 33. The Court therefore finds that Vizio has sufficiently demonstrated that Vizio was subject to suit in the Northern District of California at the time the Vizio Action was filed.[5]

### 3. Toshiba/TAIS Action

Due to the lack of clarity in the initial record as to the asserted basis for jurisdiction and venue in the Northern District of California as to Toshiba, a Japanese Corporation, and TAIS, an American subsidiary of Toshiba that is responsible for distributing Toshiba-branded electronics, the Court permitted additional briefing and subsequently held a hearing on these matters. The primary focus of the hearing was whether TAIS, headquartered in the Central District of California, had sufficient contacts with the Northern District of California such that venue was proper in that

---

[5] It is undisputed that Vizio is headquartered in the Central District of California, and Vizio's activities within California appear to subject Vizio to the jurisdiction of federal courts in any district within the state of California. However, as discussed above, federal statute provides that venue in a state with multiple judicial districts is to be determined based on viewing each district as if it were a different state, 28 U.S.C. § 1391(d), and thus, Vizio's contacts with the Northern District of California were analyzed to determine if venue was proper there. Because it is undisputed that Vizio's contacts with the Northern District of California are sufficient to satisfy the International Shoe standard, those contacts not only establish that venue is proper in that district, but also provide an alternative basis for that court to assert jurisdiction over Vizio irrespective of the fact that Vizio is headquartered in California.

district <u>at the time</u> the Toshiba/TAIS Action was filed.  Also addressed was the relationship between Toshiba and TAIS.

Based on the testimony presented at the hearing by Masa Okumura, TAIS's "Director of Product Development" for PCs, laptops, tablets, and other electronics, the Court finds that TAIS has demonstrated that, at the time the Toshiba/TAIS Action was filed, <u>both</u> jurisdiction and venue were proper in the Northern District of California as to TAIS.  First, as to jurisdiction, it is undisputed that TAIS is headquartered in the Central District of California. Accordingly, federal courts in any district in California appear to have jurisdiction over TAIS based on its continuous and systematic activities in that state.  <u>Cf.</u> <u>J. McIntyre Machinery, Ltd. v.</u> <u>Nicastro</u>, 131 S. Ct. 2780, 2787 (2011) (plurality) ("Citizenship or domicile—or, by analogy, incorporation or principal place of business for corporations—also indicates general submission to a State's powers" (citing <u>Goodyear Dunlop Tires Operations, S.A. v.</u> <u>Brown</u>, 131 S. Ct. 2846, 2854 (2011)).

Second, even disregarding any of TAIS's activities that are confined to the Central District of California, TAIS's purposeful, longstanding, and intentional contacts with the Northern District of California independently establish that <u>both</u> jurisdiction and venue are proper in that court.  At the hearing before this Court, Masa Okumura testified about TAIS's direct and purposeful targeting of "enterprise customers" in the Northern District of California,

such as Oracle, Intel, Google, and Applied Materials. 2:14cv346, Hearing Tr. 15-20, ECF No. 57.  In the first half of 2014 (the period immediately preceding the filing of the Toshiba/TAIS Action) TAIS made direct sales of "a few thousand units" of Toshiba-branded products to three enterprise customers in the Northern District of California and also had one employee "system engineer" that worked in that district in order to directly interface with TAIS's "enterprise customers" that are located there.  Id. at 20-21. Additionally, Mr. Okumura testified that TAIS sold more than a hundred thousand Toshiba-branded laptops and tablets in the first half of 2014 in the Northern District of California through sales to national retail chains such as Best Buy, Costco, Staples, and others.  Id. at 22-23.  Such evidence is sufficient to render jurisdiction and venue proper as to TAIS in the Northern District of California.  Nuance Communications, 626 F.3d at 1230-31.

The Court likewise finds that Mr. Okumura's testimony, when considered in conjunction with the affidavit previously provided by Masatsugu Mukuge, Toshiba's "Chief Specialist," sufficiently demonstrates that at the time the Toshiba/TAIS Action was filed, jurisdiction and venue were proper in the Northern District of California as to Toshiba, a foreign corporation.  As to jurisdiction, Toshiba has a wholly owned subsidiary (TAIS) located in California for the purpose of distributing Toshiba's products throughout the United States, to include within the state of

19

California.    In  the  six  months  preceding  the  filing  of  the
Toshiba/TAIS action, TAIS sold over 370,000 Toshiba-branded laptops
and tablets in California.  2:14cv346, Hearing Tr. 23, ECF No. 57.
Additionally, Mr. Okumura, who works for TAIS, testified that it is
his  responsibility  to  "understand  the  U.S.  market  needs  and
understand technology trends in the United States" and to pass this
information on to Toshiba's product development team.  Id. at 15.
Mr. Okumura further testified that it was TAIS's understanding that
Toshiba's intent was for "TAIS to sell nationally, which would
include Northern California, because it is a large market."  Id. at
18.  Mr. Mukuge's affidavit clearly confirmed such fact, indicating
that "Toshiba Corp. is aware and intends that the Accused Products
are or have been marketed and sold to customers in the Northern
District of California."  ECF No. 49 ¶ 9 (emphasis added).

     Jurisdiction over Toshiba in California for matters relating
to the sale of Toshiba products is appropriate because the record
demonstrates that the sale of Toshiba products in California "is not
simply an isolated occurrence, but arises from the efforts of the
manufacturer or distributor to serve directly or indirectly, the
market for its product[s]" as Toshiba "delivers its products into
the  stream  of  commerce  with the expectation that they will be
purchased by consumers in [California]."  World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297-98 (1980) (emphasis added); cf.
AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1365 (Fed. Cir.

2012) (explaining that isolated and sporadic shipments into the forum state by the defendants were insufficient to establish minimum contacts under any stream of commerce theory).  Not only does Toshiba have a well-established and long-standing distribution network operated by a wholly-owned subsidiary that directly targets customers in California, but such subsidiary is itself headquartered within California.  Nuance Communications, 626 F.3d at 1232-34. Applying the three part jurisdiction test articulated by the Federal Circuit: (1) Toshiba purposefully directed its activities in an effort to sell Toshiba products to California customers; (2) the instant allegations of patent infringement clearly arise out of and are related to such sales; and (3) a California court's assertion of jurisdiction over Toshiba is reasonable and fair in light of Toshiba's working relationship with TAIS, a wholly owned subsidiary, as both a long-standing affiliated distributor of Toshiba products and as a research arm to gauge American consumers demand for Toshiba products.  See Corning Optical Communications Wireless, Ltd. v. Solid, Inc., No. 3:14cv367, 2014 WL 4104058, at *3 (E.D. Va. Aug. 18, 2014) (concluding that federal courts in California had jurisdiction over a Korean supplier that distributed its products in the United States through a California distributor because the Korean company "knew it was affiliating itself with a business in California in a manner that would lead to substantial contacts with

California") (internal quotation marks and citations omitted).
Stated differently:

> [Toshiba] established a distribution system with [TAIS]
> that was intended to deliver products to the U.S. market
> via a [wholly] owned California entity. [Toshiba] knew
> the destination of its products, and its conduct and
> connections with the forum state [of California] were such
> that it should have reasonably have anticipated being
> brought into court there.

Nuance Communications, 626 F.3d at 1234; see Beverly Hills Fan Co.

v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994)

(discussing various formulations of the "stream of commerce"

jurisdictional theory, but noting that, under any version of the

test, exercising jurisdiction over a foreign defendant in a patent

infringement action is "consonant with due process" when a foreign

defendant, "acting in consort" with an American distributor, "placed

the accused [products] in the stream of commerce" knowing the "likely

destination of the products" and knowing that "their conduct and

connections with the forum state were such that they should

reasonably have anticipated being brought into court there");

Fujitsu Ltd. v. Belkin Int'l, Inc., 782 F. Supp. 2d 868, 884 (N.D.

Ca. 2011) (finding jurisdiction over a Taiwanese corporation based

on the sale of such corporation's allegedly infringing goods in

California, noting that such finding did not depend on whether the

sales were made directly by the foreign corporation or through its

American subsidiary acting as the distributor). It therefore

comports with both the California long-arm statute and the due

process clause of the United States Constitution for any federal court in California to exercise jurisdiction over Toshiba.

As to venue, unlike the district by district § 1391(d) analysis performed for domestic corporations, Toshiba's status as a <u>foreign corporation</u> subject to the jurisdiction of California courts automatically renders venue proper in any federal district in California, regardless of Toshiba's contacts specific to that individual district. See 28 U.S.C. § 1391(c)(3) ("For all venue purposes-- . . . a defendant not resident in the United States may be sued in any judicial district."); <u>Brunette Mach. Works, Limited v. Kockum Industries, Inc.</u>, 406 U.S. 706, 714 (1972) (indicating that the provision in § 1391 governing venue over a foreign defendant "is properly regarded, not as a venue restriction at all, but rather as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special"); <u>In re Princeton Digital Image Corp.</u>, 496 F. App'x 73, 75 (Fed. Cir. 2012) (noting that in <u>Brunette</u>, the Supreme Court "reaffirmed the long-standing rule that a patent infringement suit could be brought against a foreign defendant in any district court, and was not restricted to where the defendant resides, commits acts of infringement, or has a regular and established business as otherwise required under the patent venue statute").

Summarizing the above, the Court finds that each Defendant in all five pending actions has demonstrated that the Northern District

of California had jurisdiction over such party, and that venue was proper in that district, such that each of the five pending cases "could have been brought" in the Northern District of California at the time each case was filed.

### V. Discussion – § 1404(a) Convenience and Justice Factors

Once it is determined that an action could have been filed in the proposed transferee district, the subsequent decision to transfer venue "is committed to the sound discretion of the district court." One Beacon Ins. Co., 312 F. Supp. 2d at 828 (citing Verosol B.V., 806 F. Supp. at 591); see Gower v. Lehman, 799 F.2d 925, 927 (4th Cir. 1986) ("A section 1404(a) transfer merely involves a discretionary change to another district where the action could have been brought."). As previously set forth herein, although there are various ways to formulate the relevant considerations for determining whether a discretionary transfer is appropriate, the primary considerations are: (1) the plaintiff's choice of forum; (2) witness convenience and access to sources of proof; (3) party convenience; and (4) the interest of justice. Koh, 250 F. Supp. 2d at 633; JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007).

#### A. Plaintiff GTS's Initial Choice of Forum

"Generally, the first factor-a plaintiff's choice of venue-is given substantial weight as '[i]t is well settled that a court should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer.'" Virginia Innovation Sciences,

Inc. v. Samsung Electronics Co., 928 F. Supp. 2d 863, 868 (E.D. Va. 2013) (alteration in original) (quoting Verizon Online Services, Inc. v. Ralsky, 203 F. Supp. 2d 601, 623-24 (E.D. Va. 2002)). However, because "the weight accorded a plaintiff's choice 'varies in proportion to the connection between the forum and the cause of action[,] . . . a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum.'" Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936, 938 (E.D. Va. 2001) (quoting GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999)). Such distinction carries significance because when a plaintiff chooses a forum other than its home "'it is often more difficult for the plaintiff to show why such a forum is more convenient for the plaintiff.'" Koh, 250 F. Supp. 2d at 634 (quoting 17 James Wm. Moore, et al., Moore's Federal Practice § 111.13[1][c] (3d ed. 2002)).

Although the first step in the analysis typically looks to whether a plaintiff has filed suit in its "home forum," various opinions from prior patent cases filed in this district have recognized that the label of "home forum" is not itself dispositive. See Virginia Innovation Sciences, 928 F. Supp. 2d at 868 ("'Even when the plaintiff sues in its home forum, that fact is not by itself controlling and the weight of that factor depends on the nexus tying the case to the forum.'" (quoting Gebr. Brasseler GmbH & Co. KG. v. Abrasive Tech., Inc., No. 1:08cv1246, 2009 WL 874513, at *2 (E.D.

Va. Mar. 27, 2009)). Multiple judges, including the undersigned, have previously held in patent cases that it may be appropriate to afford a plaintiff's choice of forum "minimal weight," when the plaintiff has few business activities in the district and is appropriately classified as a "non-practicing entity," that "does not research and develop new technology," but instead merely "acquires patents, licenses the technology, and sues alleged infringers." Pragmatus AV, LLC v. Facebook, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011); see Innovative Communications Techs., Inc. v. Vivox, Inc., No. 2:12cv7, 2012 WL 4738979, at *4 (E.D. Va. Oct. 3, 2012) (giving "little or no weight" in favor of the plaintiff's chosen forum based on plaintiff's "negligible" presence in the district, noting that although the plaintiff asserted that its home office was in Arlington, Virginia, the plaintiff did not appear to have any permanent employees that worked there); CIVIX-DDI, LLC v. Loopnet, Inc., No. 2:12cv2, 2012 WL 3776688, at *3-4 (E.D. Va. Aug. 30, 2012) (declining to give "great weight" to the plaintiff's choice of forum because even assuming that Virginia was technically plaintiff's "principal place of business," the plaintiff did not challenge its status as a "non-practicing" patent holding entity that lacked any significant operations in this district, further noting that while plaintiff's principle lived in the district, he did not even work full-time for the plaintiff); see also Bluestone Innovations, LLC v. LG Electronics, Inc., 940 F. Supp. 2d 310, 314-15 (E.D. Va. 2013)

(applying "a form of hybrid deference" to the plaintiff's choice of forum because although the record demonstrated that the plaintiff had been "continuously in Virginia since its incorporation in 2009" and had "five employees in its office," the plaintiff had acquired the patent at issue from a related entity located in Texas <u>only one week before filing suit in Virginia</u>).

Here, the Court has substantial reservations as to whether the Eastern District of Virginia is properly deemed GTS's home forum, and even if such finding is appropriate in the technical sense, the Court has little difficulty concluding that Plaintiff's ties to this forum are tenuous at best.  Moreover, this forum appears to have no special status vis-à-vis the nationwide infringement alleged in the five cases pending before this Court.

First, from Plaintiff's own submissions, it appears that GTS is a "non-practicing entity" with (at best) a single-person office in Virginia.  Plaintiff fails to advance any evidence, or even argument, suggesting that GTS has "manufacturing facilities, operations, . . . or employees that are located in this district besides its [president]." <u>CIVIX-DDI, LLC</u>, 2012 WL 3776688, at *3.

Second, although the above facts are already generally unfavorable to GTS, such facts are called into question in light of the evidence advanced by Defendants regarding GTS's status as a properly licensed corporation.  Notably, Defendants' evidence reveals that during the course of this litigation, Defendants

attempted to verify GTS's status as a valid business entity by performing online searches of the Virginia State Corporation Commission's website and the Westlaw Delaware Business Registration Records database.  Such electronic records revealed that, in late 2014 around the time these five cases were filed in this Court, Plaintiff was not registered to do business in Virginia and lacked "good standing" in Delaware, its state of incorporation.[6]  See, e.g., 2:14cv391, ECF No. 23-6; 2:15cv17, ECF No. 15-2.

Third, Defendants advance evidence that appears to demonstrate that Plaintiff does not even maintain a dedicated office of one full-time employee in the Eastern District of Virginia. Specifically, Defendants' photographic evidence and sworn affidavits demonstrate that a site visit was performed at GTS's claimed Virginia address, but rather than finding GTS's name in the building directory or on the business suite that Plaintiff claims as its physical address, Defendants located signs for two different business entities that are operating from such same suite.[7]  See, e.g., 2:14cv391, ECF No. 20; 2:15cv17, ECF No. 15-6.  In response

---

[6] Microsoft/Nokia acknowledge in their briefing that GTS regained its "good standing" in Delaware in late 2014, but note that such development occurred after GTS's lack of good standing was highlighted in a brief filed in the Toshiba/TAIS action.  2:15cv17, ECF No. 19.  Microsoft/Nokia and other Defendants further highlight that GTS is a subsidiary of an active California company, and Defendants thus argue that GTS exists in Virginia for the sole purpose of filing suit in this district.  Id.

[7] Defendants assert that the two entities found at the physical address are operated by the same individual that acts as Plaintiff's president.

to such evidence, GTS has largely stood mute, as Plaintiff has not advanced an affidavit from GTS's president, or any other employee or owner of GTS. Rather, <u>litigation counsel</u> for GTS has advanced a sworn affidavit asserting, without providing any factual details, that "Seok Chan Baek is employed as the President of Global Touch Solutions, LLC ("GTS"), which was incorporated in September of 2012, and whose principal place of business has been in Vienna, Virginia since GTS's incorporation." 2:14cv391, ECF No. 21. The affidavit further states that "Mr. Baek has resided in this District since 2006 . . . [and] is <u>familiar with the business operations</u> of GTS." <u>Id.</u> Nowhere in such affidavit does GTS explain what "operations" GTS purportedly performs, nor does it assert that GTS has any business documents located in Virginia.[8]

In this Court's view, failing to have a dedicated office in this district, allowing corporate registrations and/or business licenses to lapse, and advancing as the strongest argument for a legitimate presence that the corporate president lives in the district and is "familiar" with the corporation's undisclosed "operations," is inadequate to demonstrate that GTS has sued in its "home forum." Moreover, even if this district is assumed to be GTS's home forum in the technical sense, as a non-practicing entity that does not even

---

[8] As noted by Vizio, 2:14cv347, ECF No. 29, the Eastern District of Virginia is purportedly the home forum of GTS and the home of its president, Mr. Baek, and it would presumably have been a simple procedure to obtain an affidavit from Mr. Baek. It is therefore curious that Mr. Baek did not himself submit an affidavit in support of GTS's filings.

maintain an office in this district with a single full-time employee, GTS's choice of forum is afforded minimal weight by the Court. <u>See Samsung Electronics Co., Ltd. v. Rambus, Inc.</u>, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005) ("When the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight.").

Turning to the connection between the instant forum and the facts of the five pending patent infringement actions, although the Court does not question that the instant forum was a "permissible" forum for the filing of these five suits, the fact that "Virginia's residents purchase and use allegedly infringing products" and the fact that some Defendants have stores or dedicated salespeople in this district to market and sell such products is not unique to Virginia even by Plaintiff's own allegations, and it appears that Defendants "likely have this same contact with every other state in this nation." <u>Lycos, Inc. v. TiVo, Inc.</u>, 499 F. Supp.2d 685, 692 (E.D. Va. 2007). Accordingly, in light of GTS's tenuous ties to this forum, the lack of any allegedly infringing activity occurring in Virginia that is not also occurring in any other state with a large customer base for electronics, and the fact that "[t]he design and manufacture of the allegedly infringing products" as to <u>each of the five cases</u> "occurred outside of Virginia," GTS's "choice of the Eastern District of Virginia as the forum for th[ese] action[s] will . . . not impede transfer, if the other convenience and justice

factors point to the [Northern District of California]." Id. at 692-93; see NanoEntek, Inc. v. Bio-Rad Laboratories, Inc., No. 2:11cv427, 2011 WL 6023189, at *3 (E.D. Va. Dec. 2, 2011) ("Mere sales and marketing activity does not entitle [the plaintiff's] choice of forum to substantial weight when none of the infringing products were developed or produced in this District." (citing Agilent Techs., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 327 (E.D. Va. 2004)); Bascom Research, LLC v. Facebook, Inc., No. 1:12cv1111, 2012 U.S. Dist. LEXIS 186712, at *2-4 (E.D. Va. Dec. 11, 2012) (giving Plaintiff's choice of forum "minimal weight due to the plaintiff's weak connection to the Eastern District of Virginia" in a case where the plaintiff had "no facilities, operations, offices, or employees that are located in this district besides its principal," and while the companies' principle was a long-term resident of Virginia, he did "not appear to work full-time for the plaintiff").

### B. Witness Convenience & Access to Sources of Proof

"The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a)," and if "reasonably possible, live testimony is preferred to other means of presenting evidence." Samsung Electronics Co., 386 F. Supp. 2d at 718. Assessment of this factor generally requires a court to consider, among other things, the "'ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process.'" Lycos,

Inc., 499 F. Supp. 2d at 693 (quoting Samsung Electronics Co., 386 F. Supp. 2d at 717 n.13). "Naturally, in contrast to witness testimony that is merely cumulative, 'greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue.'" Samsung Electronics Co., 386 F. Supp. 2d at 718 (quoting Koh, 250 F. Supp. 2d at 636). Additionally, "the convenience of non-party witnesses should be afforded greater weight [than the convenience of party witnesses] in deciding a motion to transfer." Id. at 719 (citing Koh, 250 F. Supp. 2d at 637).

As the parties seeking transfer, Defendants bear the burden of demonstrating that the § 1404(a) factors strongly favor transfer, which is typically a high bar. Bluestone Innovations, LLC, 940 F. Supp. 2d at 316 n.9 (citing Koh, 250 F. Supp. 2d at 633). However, here, because Plaintiff's choice of forum is afforded limited weight, the metaphorical "bar" has been lowered. Id. Moreover, "[i]n a patent infringement action, as a general rule 'the preferred forum is that which is the center of the accused activity,'" and the "'trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" GTE Wireless, Inc., 71 F. Supp. 2d at 519 (quoting Santrade Ltd. v. Berndorf ICB International Conveyor Belts, Inc., No. 6:92-2032-3, 1992 WL 470482, at *2 (D.S.C. Oct. 29, 1992)); see DietGoal Innovations LLC v. Wegmans Food Markets, Inc., 993 F. Supp.

2d 594, 602 (E.D. Va. 2013) ("The location of the defendants is particularly relevant . . . because in a patent infringement case, the preferred forum is frequently the center of the accused activity." (internal quotation marks and citations omitted)).[9]

To carry its burden in this district, the party seeking transfer is generally required to "proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh, 250 F. Supp. 2d at 636 (citing Corry v. CFM Majestic, Inc., 16 F. Supp. 2d 660, 667 n.16 (E.D. Va. 1998)). However, in patent cases, it is "permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material." Koh, 250 F. Supp. 2d at 636-37 (emphasis added) (citing Corry, 16 F. Supp. 2d at 667 n.16). Although Federal Circuit law does not control the § 1404(a) analysis, the Federal Circuit has recognized the general proposition that, because "'the bulk of the relevant evidence usually comes from the accused infringer, . . . the place where the defendant's documents

---

[9] As previously recognized by the undersigned judge, "the general rule recommending the 'center of the accused activity' as the preferred forum in patent infringement cases applies only when the plaintiff did not file suit in its home forum." Virginia Innovation Sciences, 928 F. Supp. 2d at 869 n.2 (citing comScore, Inc. v. Integral Ad Science, Inc., 924 F. Supp. 2d 677, 684 (E.D. Va. 2013)). However, here, as discussed above, Plaintiff's ties to the instant forum are so tenuous that such preference is applicable in this case.

33

are kept weighs in favor of transfer to that location.'" In re
Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting Neil
Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 330
(E.D.N.Y. 2006)); see GTE Wireless, Inc., 71 F. Supp. 2d at 519
(transferring the case to California as "the central issues
concerning the accused activity revolve around the cellular phones
which are designed and manufactured in San Diego") (emphasis added).

Here, it should go without saying that the existence of five
separate cases necessarily means that there are varying "centers of
accused activities" where the allegedly infringing products are
designed, and thus, there are varying locations where the most
material documents, and the persons identified by Defendants as the
most likely trial witnesses, can be found.[10]   However, although the
specific location of the documents and witnesses varies somewhat from
case to case, all cases involve specifically identified witnesses
and sources of proof on the west coast of the United States in relative
close proximity to the Northern District of California.   It appears
undisputed that Apple has the strongest argument for transfer to the
Northern District of California, as Apple has its company management,
research and development, and marketing offices primarily in or near
Apple's headquarters in Cupertino, California, which is in the
Northern District.   2:14cv390, ECF No. 17-1; see Macronix Int'l Co.

---

[10] Moreover, within the Microsoft/Nokia Action, there appears to be one
primary "hub of activity" for the Microsoft-branded products, and a
different "hub of activity" for the Nokia-branded products.

v. Spansion Inc., No. 3:13cv679, 2014 WL 934521, at *5 (E.D. Va. Mar. 10, 2014) ("The record shows that design, research, importation, marketing, and sales activity was centered in the Northern District of California, which 'permit[s] the inference that material witnesses and documents are located in the [Northern] District of California and will be more readily accessible' in that district than this one." (alterations in original) (quoting Koh, 250 F. Supp. 2d at 638)).   Defendant Motorola has also provided evidence demonstrating that likely witnesses and sources of proof, to include documents related to "the research design, sales and marketing of the Accused Products and the Accused Functionality" are located in the Northern District of California, where Motorola has a large physical facility.   2:14cv391, ECF No. 19.   Motorola has further provided evidence that three third-party suppliers that provide parts integrated into the accused devices: (1) are located in California, with two of these suppliers located within the Northern District; and (2) likely have information relevant to the Motorola Action.  2:14cv391, ECF No. 19.  As to Nokia, its "principle place of business" is in the Northern District of California where it makes decisions regarding the sales and marketing of Nokia's products. 2:15cv17, ECF No. 19-5.    Nokia's "research and development activities" that occur within the United States all occur in a facility in the Southern District of California, and certain accused devices were "developed wholly" at such facility.   2:15cv17, ECF No.

35

19-4.   Similar to Motorola, Nokia has provided evidence demonstrating that a third-party hardware supplier who provides components associated with the display, touch screen, and/or power management capabilities (which appear relevant to Plaintiff's infringement claims) is located in Southern California.  Id.

Staying in the state of California, but leaving the Northern District, Vizio has advanced evidence demonstrating that witnesses and physical evidence are located at Vizio's "principle place of business and headquarters" in the Central District of California, which is several hundred miles from the courts of the Northern District of California, rather than several thousand miles from this Court.  2:14cv347, ECF No. 26-5.  Similarly, TAIS is a "California corporation headquartered in and having its principle place of business in [the Central District of] California," 2:14cv346, ECF No. 20, although the record indicates that TAIS only advises parent company Toshiba on the U.S. demand for electronics, with the hub of design and development activity for Toshiba-branded products being located in Japan.  2:14cv346, ECF No. 20.  TAIS's business documents related to the sales and marketing of the allegedly infringing products are located in its California headquarters, with some engineers responsible for testing accused tablets and laptops located in the Central District of California, and others located in Tennessee.  Id.

Leaving the state of California, but staying on the west coast, Microsoft's headquarters and center of accused activity is located in Redmond, Washington, where Microsoft is headquartered. [11] 2:15cv17, ECF No. 19-1.  Microsoft has also provided evidence indicating that a <u>third-party</u> hardware component supplier that has worked with Microsoft to design and develop power-management capabilities of some of Microsoft's accused products is headquartered in the Northern District of California, and has another location in Redmond, Washington.  2:15cv17, ECF No. 19-1.  Other than retail stores operated by some of the named Defendants, it does not appear that any of the Defendants maintain physical offices in Virginia that contain admissible evidence relevant to the allegations in the respective complaints. [12]

Although some Defendants clearly have stronger ties to the Northern District of California than others, Defendants all assert that witnesses and documents associated with Apple and believed to be located in the Northern District of California would be necessary in all pending actions as such materials and persons are relevant

---

[11] Microsoft also indicates that some of the research and design activities for accused Microsoft products occurs in Fort Collins, Colorado. 2:15cv17, ECF No. 19.  However, Microsoft asserts that all of the Fort Collins documents are also accessible from its worldwide headquarters in Redmond, Washington.

[12] Plaintiff initially asserted in the Toshiba/TAIS Action that TAIS may have a physical office in Virginia, but TAIS provided responsive evidence indicating that while TAIS previously had two offices in Virginia, one closed in 2005 and the other closed in 2006.  2:14cv346, ECF No. 34.

to an anticipated invalidity defense associated with Apple's prior art.[13]    See In re Microsoft Corp., 630 F.3d 1361, 1363 (Fed. Cir. 2011) (granting a petition for a writ of mandamus and directing the transfer of a patent case from Texas to the Western District of Washington, where Microsoft is headquartered, based on the plaintiff's tenuous ties to Texas and the fact that the transferee district contained: (1) all of defendant's "witnesses relating to sales, marketing and product direction and prior art"; and (2) all of the defendant's "relevant documents and evidence relating to the marketing, development, and design of the accused products" (emphasis added)). Defendants further advance evidence indicating that several other specifically identified "non-party" individuals appear to reside in the Northern District of California, and are likely sources of testimony and documentary evidence in support of Defendants' cases. See, e.g., 2:14cv391, ECF No. 20.    As explained by the Federal Circuit while performing the § 1404(a) analysis under the law of the Fifth Circuit: "Our prior orders in [patent] venue transfer cases make clear that the combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff[']s chosen forum is an important consideration." In re Acer America Corp., 626 F.3d 1252, 1254-55 (Fed. Cir. 2010) (emphasis added).

---

[13] In all but the Apple Action, any individuals employed by Apple would be "non-party" witnesses.

In addition to identifying where witnesses and sources of proof are located, Vizio's briefing included evidence outlining the frequency and low-cost of flights for travel between the Central District of California and the Northern District of California as contrasted with flights between the Central District of California and the Eastern District of Virginia. 2:14cv347, ECF Nos. 32-2, 32-3. Unsurprisingly to anyone who has ever taken a cross-country flight, such evidence further demonstrates that litigating these cases in the Northern District of California would be far more convenient, saving both time and money, for certain party and non-party witnesses.

On the other side of the ledger, GTS has not identified any witnesses, other than its president, that are located within the Eastern District of Virginia. Plaintiff does represent that one of the prosecuting attorneys for the patents in suit resides in Maryland, and proceeding in this district would clearly be more convenient for such individual if he is ultimately necessary as a trial witness. See Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (indicating in an order granting a § 1404(a) motion to transfer that even though the plaintiff identified some witness in Virginia that may be necessary at trial, it was "clear that the majority of documentary and testimonial evidence is available and most easily accessible in the Northern District of California"). Plaintiff's failure to identify any

witnesses or evidence located in the state of Virginia other than Plaintiff's president appears consistent with: (1) the fact that Plaintiff itself does not appear to engage in any relevant activities in this state; and (2) Plaintiff's allegations as to Defendants' alleged activities within the Eastern District of Virginia appears limited to broad allegations that Defendants "transacted business" and committed "direct acts of patent infringement," in this district, see, e.g., 2:14cv391, ECF No. 1 ¶ 4, allegations that appear to be equally applicable in every other judicial district within the United States.[14]

On balance, considering the above, the Court finds that this factor favors transfer of each of the pending cases to the Northern District of California. While evidence may be lacking as to whether some of the specifically identified witnesses would be willing to travel from the west coast to Virginia, there is generalized evidence, including affidavits, establishing the unremarkable fact that cross-county travel will be more burdensome than travel within the state of California (or alternatively, on the west coast). Notably, even in the absence of individualized proof regarding the ability/willingness of potential witness to travel, "making

---

[14] The inventor of the eight patents at issue across these five pending cases resides in South Africa, and absent case-specific evidence (which has not been presented by Plaintiff), such foreign individual's convenience, or rather inconvenience, should he need to travel internationally to testify at trial, is deemed to be neutral as between this forum and the Northern District of California. Jaffe v. LSI Corp., 874 F. Supp. 2d 499, 504 (E.D. Va. 2012).

attendance more convenient or affordable for a willing witness still weighs in favor of transfer, just not as heavily." Bluestone Innovations, LLC, 940 F. Supp. 2d at 317 (citations omitted); cf. Marsh v. United States, No. 1:06cv93, 2007 WL 2021932, at *3 (W.D. Va. July 10, 2007) (finding that, even in the absence of the identification of "specific witnesses," the record was sufficient to demonstrate "that all relevant witnesses would be located in California" and that if the case were to remain in Virginia, "the costs of obtaining each witness would be much greater because the necessary witnesses would be required to travel across the country").[15]

In contrast to the comparatively centralized evidence on the west coast, there no evidence suggesting that a single witness, other than Plaintiff's president, is located in this district. Similarly, Plaintiff fails to assert that it possesses any relevant business documents in this district. As not a single non-party witness from this forum has been identified, and multiple potential third-party

---

[15] This Court recognizes the reality that, based on the allegations in Plaintiff's complaints, and the early stage in the proceedings, it is difficult for any Defendant to provide an accurate trial witness list or to identify precisely what each witness will testify about. See In re Genentech, Inc., 566 F.3d at 1343 ("A district court should assess the relevance and materiality of the information the witness may provide." (emphasis added)). It is similarly difficult for any individuals identified as being a "likely" witness to predict months, or even a year or more, in advance whether he or she will be available for cross-country travel at the time of the trial. However, what is resoundingly clear from the current record is that the vast majority of the witnesses and sources of proof identified by the parties in these pending cases are located on the west coast, geographically centered in the Northern District of California.

witnesses are located in the Northern District of California, the proposed transferee venue "is a venue with usable subpoena power," and such fact "weighs in favor of transfer, and not only slightly." In re Genentech, Inc., 566 F.3d at 1345.

### C. Party Convenience

Tracking the analysis in the preceding section, the convenience of the parties favors transfer to the Northern District of California. Of the six Defendants selling brands of products that allegedly infringe on the patents in suit, three are headquartered in California (Apple, Vizio, Nokia) and another on the west coast in far closer proximity to the Northern District of California than this district (Microsoft). See In re TS Tech USA Corp., 551 F.3d 1315, 1321 (Fed. Cir. 2008) (holding that the district court "clearly abused its discretion" in denying a § 1404(a) motion to transfer venue from Texas to Ohio, explaining that "the vast majority of identified witnesses, evidence, and events leading to this case involve Ohio or its neighboring state of Michigan" (emphasis added)).

As Toshiba is headquartered in Japan, it can be argued that its convenience is arguably neutral between the two potential forums as the transport of witnesses and physical evidence will require international travel regardless of the location. See Jaffe v. LSI Corp., 874 F. Supp. 2d 499, 504 (E.D. Va. 2012) (suggesting that international travel is always burdensome). However, the fact that Toshiba's subsidiary and American distributor TAIS is headquartered

in California and will presumably be presenting a unified defense with Toshiba in the Toshiba/TAIS action likely makes the Northern District of California slightly more convenient for Toshiba. Similarly, while Motorola appears to have primary operations in Chicago, Illinois, it also has a large facility in Northern California with hundreds of employees, which makes the Northern District of California more convenient for Motorola.

Plaintiff's president, who lives in the Northern District of Virginia, of course finds the instant forum more convenient. However, Plaintiff does not appear to dispute the fact that GTS is a non-practicing entity or that, at the time suit was filed, GTS lacked a license to do business in Virginia, lacked "good standing" in its state of incorporation, and was wholly owned by an "active" California company. Moreover, in light of the fact that GTS does not appear to have any full-time employees, may not even have an actual office, and has failed to articulate any corporate activities tied to this district, the record fails to reveal that GTS possesses any relevant evidence in this district. The fact that Plaintiff has failed to identify any employees, relevant documents, or even relevant classes of documents that it possesses in this forum reduces the degree of inconvenience that GTS would suffer from a change of venue.

On balance, the Court finds that this factor favors transfer because although some degree of inconvenience is almost always

43

shifted from a defendant to a plaintiff when that defendant's motion to transfer venue is granted, the degree of inconvenience shifted to Plaintiff in this case is far outweighed by the degree of inconvenience avoided when the location of the sources of proof is considered.

### D. Interests of Justice

As recently explained by another Judge of this Court:

> The interests of justice factor "encompasses public interest factors aimed at 'systemic integrity and fairness,'" Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (quoting Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 721 (E.D. Va. 2005)), the most prominent elements of which are "judicial economy and the avoidance of inconsistent judgments." Id. "Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Id. (citing Samsung, 386 F. Supp. 2d at 721 n.16).

Jaffe, 874 F. Supp. at 505. "Systemic integrity also accounts for a party's 'attempt to game the federal courts through forum manipulation.'" Macronix Int'l, 2014 WL 934521, at *7 (quoting Samsung Electronics Co., 386 F. Supp. 2d at 721).

Here, in these five patent infringement actions alleging nationwide infringement by large national and/or international corporations, many of the above noted considerations do not apply, as: (1) there is arguably no "locality" to these controversies; (2) the case will be governed by federal law that any federal court is equally capable of applying; and (3) it would arguably be no more

fair to burden jurors of one district than another. That said, the fact that the majority of the Defendants across these five cases have strong ties to California, and neither Plaintiff nor Defendants have any strong ties to this forum, appears to slightly favor transfer to California.

As to judicial economy and the avoidance of inconsistent judgments, this Court firmly believes that such factor significantly favors keeping these cases together, whether it be in this Court, or in the Northern District of California. See In re Vistaprint Ltd., 628 F.3d 1342, 1347 (Fed. Cir. 2010) ("[I]t is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of paramount consideration' and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result.") (internal quotation marks and citation omitted). Notwithstanding the AIA's recent impact on the joinder rules in patent cases, Plaintiff does not dispute the benefit in keeping the cases together, and acknowledged at a recent hearing conducted in the Toshiba Action that keeping the cases together, from an economy and resources perspective, makes sense for the Court and the parties. Notably, if this Court considered each case in a vacuum, giving no weight to concerns of economy and consistency, Plaintiff could be in the undesirable position of being required to litigate the Apple

45

Action in the Northern District of California, the Vizio Action in the Central District of California,[16] at least one action in this Court, with the remaining two actions either retained in this Court or transferred to the Northern District of California alongside the Apple Action.

Accordingly, in light of the fact that none of the five cases have any notable ties to this District, the Apple and Motorola Actions clearly have strong ties to the Northern District of California where Apple and Motorola maintain large physical facilities with hundreds of employees and physical evidence that is material to the infringement allegations, and all of the other related cases not only could have been filed in the Northern District of California, but the other convenience and justice considerations make such forum far more convenient than the Eastern District of Virginia, the Court finds that "judicial economy" strongly favors transfer of all five cases to the Northern District of California.[17] Although the

---

[16] Vizio is the only Defendant that alternatively moved for transfer to a different district in the event that the cases were not kept together.

[17] This Court recognizes that Multidistrict Litigation procedures may be available to reclaim some degree of economy if some of the cases were retained by this Court while others were transferred to the Northern District of California and the Central District of California. That said, because the parties in this case appear to agree that the economies of keeping these cases together benefit both Plaintiff and the Defendants, and surely also will consume the least amount of judicial resources, in the context of this case the Court finds that there is a strong basis for keeping the cases together. Cf. Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960) (noting in a case decided before the establishment of the Judicial Panel on Multidistrict Litigation that "[t]o permit a situation in which two cases involving precisely the same issues are

decisions regarding pre-trial consolidation procedures are plainly in the purview of the transferee court, this Court notes that the Northern District of California has Local Rules specific to patent cases stating that "[w]hen actions concerning the same patent are filed within two years of each other by the same plaintiff, they will be deemed related," and that "the Clerk will reassign the related higher-numbered cases to the Judge assigned to the lowest-numbered case." N.D. Cal. Loc. Patent R. 2-1.

This Court acknowledges that, in light of historical "time to trial" data of the various federal districts, denying the motions to transfer may result in a faster resolution of the instant cases. However, while "relative docket conditions are considered in weighing the interest of justice," such factors are "not given great force," particularly when the other convenience and justice factors favor transfer. Samsung Electronics Co., 386 F. Supp. 2d at 723 (citing GTE Wireless, Inc., 71 F. Supp. 2d at 520). Moreover, here, "[n]either party has indicated that one court has a disproportionate case burden compared to the other." Bluestone Innovations, LLC, 940 F. Supp. 2d at 320; see comScore, Inc. v. Integral Ad Science, Inc., 924 F. Supp. 2d 677, 691 n.16 (E.D. Va. 2013) ("Raw numbers as to docket speed and congestion do not necessarily tell the whole story."). While speed to resolution/speed to trial is one of many

_____

simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

factors appropriately considered in the § 1404(a) analysis, the weight to be afforded this factor is further reduced when a plaintiff both lacks legitimate ties to this district and the facts have no special connection to this district, because the interests of justice are not served by forum-shopping intended to take advantage of this Court's "so-called 'rocket docket.'" Samsung Electronics Co., 386 F. Supp. 2d at 723-24.[18]

### E. Summary

For the reasons set forth above, beginning with Plaintiff's tenuous ties to this district, as well as the fact that these nationwide infringement cases appear to have little, if any, special connections to this forum, the Court finds that the application of the relevant § 1404(a) convenience and justice factors warrant the transfer of all five pending cases to the Northern District of California. Not only does the record indicate that nearly all of the relevant documentary evidence is located within California or nearby to California on the west coast, but the vast majority of the identified witnesses, both party and non-party, appear to be located in California or on the west coast. The evidence before the Court therefore does more than merely demonstrate that the Northern District of California would be more convenient, Defendants have

---

[18] This Court does not suggest that a non-practicing entity deserves a less timely resolution of its civil action based on its status as non-practicing. However, here, Plaintiff has not presented evidence or argument suggesting that any of the pending cases involve exigencies sometimes found in patent litigation between active market competitors, such as when a competitor's new product launch threatens to critically impact the shape of the market.

demonstrated that such forum "is comparatively the only convenient and fair venue in which to try" these five related cases. In re Microsoft Corp., 630 F.3d at 1365 (emphasis added).

Although this Court's analysis of the § 1404(a) factors is guided by Fourth Circuit precedent, rather than Federal Circuit precedent, this Court finds instructive the position consistently taken by the Federal Circuit on this issue. In In re Nintendo Co., Ltd., 589 F.3d 1194 (Fed. Cir. 2009), the Federal Circuit concluded that the district court committed such a "clear abuse of discretion" in declining to transfer the case pursuant to § 1404(a) that mandamus relief was warranted. The Federal Circuit summarized its position as follows: "This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." Id. at 1198 (emphasis added); see In re Apple, Inc., 581 F. App'x 886, 889 (Fed. Cir. 2014) (indicating, in another opinion concluding that the district court committed a "clear abuse of discretion" by denying a § 1404(a) motion to transfer, that the fact that "Apple identified at least eight prospective party witnesses in the transferee venue with relevant material information, while [the defendant] failed to identify a single prospective witness in the Eastern District of Texas," is a "strong showing of convenience [that] weighs heavily in favor of transfer") (citing In re Nintendo

49

Co., 589 F.3d at 1199-1200); see also In re Genentech, Inc., 566 F.3d
at 1345 (noting, in a discussion specifically tailored to patent
cases, that because "the bulk of the relevant evidence usually comes
from the accused infringer," the "place where the defendant's
documents are kept weighs in favor of transfer to that location"
(internal quotation marks and citation omitted)).

As long-acknowledged by the United States Supreme Court, "the
purpose of [§ 1404(a)] is to prevent the waste of time, energy and
money and to protect litigants, witnesses and the public against
unnecessary inconvenience and expense." Van Dusen v. Barrack, 376
U.S. 612, 616 (1964) (internal quotation marks and citation omitted).
On this record, Defendants have sufficiently demonstrated that
transferring these cases will prevent the waste of time, energy, and
money, while advancing the interests of justice. Each of the pending
motions to transfer is therefore **GRANTED**.

## VI. Conclusion

As set forth in detail above, the Court finds that each Defendant
in the five pending actions has demonstrated that, at the time the
relevant suit was filed, the United States District Court for the
Northern District of California had jurisdiction over the named
Defendant(s) and that venue was proper in that Court. After
considering the § 1404(a) convenience and justice factors, the Court
hereby **GRANTS** each of the Defendants' motions to transfer venue to
the Northern District of California in each of the associated cases

pending in this Court.  2:14cv346, ECF No. 18; 2:14cv347, ECF No. 25; 2:14cv390, ECF No. 16; 2:14cv391, ECF No. 16; 2:15cv17, ECF No. 14.  Defendant Vizio's <u>alternative</u> request to transfer venue of the Vizio Action to the Central District of California is **DENIED as moot**.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June _15_ , 2015